This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice George Bridges presiding, along with Justices Catherine Easinoff and Joseph E. Burkett. The cases number 220502, Bruning & Associates PC, Plaintiff-Appellee vs. Michael Eversman, Defendant-Appellant. Arguing for the Appellant, Thomas W. Gooch. Arguing for the Appellee, Anthony G. Barone. Good morning, and are both parties ready to proceed? Yes, Your Honor. The Appellant is ready, Your Honor. Very well. Ms. Gooch, you may proceed. Thank you, Your Honor. This brings to before you questions relating to collateral estoppel, cracks with claws, and to a certain extent, expert witnesses and the failure to supply an affidavit of an expert to oppose a summary judgment motion. First of all, as to the collateral estoppel, this allegedly arises because a divorce court judge made a finding that a marital settlement agreement was fair and reasonable during a prove-up. I submit to you, first of all, there's not an identity of parties. An attorney is not in privity with his client. An attorney has a fiduciary relationship with his client. One of the elements of collateral estoppel is that there be an identity of parties, and there certainly isn't. The identity of parties at the time of the prove-up was Mr. Eversman and the former Mrs. Eversman. So it fails on that basis. More importantly, it fails because a prove-up in a divorce action, I don't even understand what it was still doing. I mean, it's certainly nothing on the merits. It's certainly no type of a trial or hearing. It's nothing more than a divorce lawyer telling his client to answer yes to every question and you'll be divorced. And they sit up there by rote saying yes, yes, yes, yes. And then the court by rote says, I find the agreement to be fair and reasonable. He hasn't even read it. He finds it to be fair and reasonable because the clients are compelled to testify that they entered into it voluntarily and freely. So that's another reason why collateral estoppel shouldn't be applied. It's a bad system. Counsel. Oh, I'm sorry. Counsel, turning for a minute to, you mentioned an expert witness. This was about expert, getting an expert witness in the request to, for time to get an expert witness. How did Eversman comply with Supreme Court Rule 191B? Was the expert named? Were there any, was there anything about what the expert would testify to? Any facts, any affidavits filed? How was their compliance with 191B? We had not retained an expert yet. We were required to retain an expert under the case management in that matter. When the summary judgment motion was filed, at that point, we asked for time to go out and get an expert. But we were not required to have one at that time. And in fact, the case cited by my opponent, Denison B. Steinsdorf, indicates that the granting of a summary judgment motion because there wasn't an expert is improper. Well, but you didn't even ask, when you asked for additional time in November of 2019, you there wasn't even any mention there of even thinking about an expert. And you were given until December 30th of 2019. I mean, the judgment of dissolution happened November 2016. And so tell us how this was diligent on Eversman's part. Well, Your Honor, as I said, first of all, there was no requirement under the case management that we disclose an expert at that point. We have no control over when they file a summary judgment motion. And during the proceeding, we realized, yeah, it would probably help us to now go out and get one. But it wasn't necessary. And in fact, Denison's case specifically says that granting a summary judgment motion because there isn't an expert is not proper. We maintain that... But we're looking at the question of whether the trial court abused its discretion in denying you additional time to get an expert. So in looking at it in that context, that's the context for my questions. I don't believe... Correct that. I believe there was an abuse of discretion because we follow Rule 218. And the case wasn't ready to retain an expert. The necessary discovery was not complete at that point. It was way premature. I think Mr. Cooper has tried to ask me a question too. The only evidence was your client just didn't understand the $75,000 lump sum. Wasn't that his testimony? He didn't understand it? Yes. And what facts other than your client's statement that he did not understand it were developed to show that the $75,000 was unreasonable, excessive, or constituted damages to him? Well, he had, according to record, an hour to review the marital settlement agreement before he had to testify and approve of it, with no explanation other than the fact that you have to pay it or the judge will award more. Now, that's no way to represent a client in a divorce case. As a follow-up to Justice Genoff's question regarding compliance with Supreme Court Rule 191, there was not even an offer approved or a suggestion as to what an expert would testify to. Correct? That's correct. And contrary to what you argued, when the case was continued for response to the motion for summary judgment, you did not request additional time to retain an expert. Correct? That's correct. We wanted to follow the case management order that was in place in this case, and we should have been allowed to do that. And again, I come back to Nettleson that says granting a summary judgment motion because he is not an expert is not proper. And we have the right to rely on that law. As it disintegrated, we tried to expedite it and didn't want her to go out and get one, and the judge said no. But even if we had not done that, it's still improper to grant a summary judgment motion simply because we don't have an expert. We supplied the affidavit from our client. We supplied deposition testimony. It clearly created a factual question regarding proximate cause without an expert's affidavit. I'm sorry, Your Honor. What was the breach of duty here? The breach of duty was threefold. The breach of duty was not accurately explaining the marital settlement agreement. The breach of duty was telling him he had to settle the case because the trial judge was not going to give him any better of a deal. The breach of duty was an excessive amount of maintenance without calculating it properly. The breach of duty was the improper preparation of the quadros and the need for our client to go out and hire another lawyer to fix what Brody had done wrong. And the breach of duty was the charging of excessive and unreasonable legal fees, including double billing, all of which are factual questions. Mr. Gooch, how do you get around Judge Nader's finding that the marital settlement agreement was fair and reasonable? Doesn't this stop Eversman from arguing otherwise, as pointed out in the Hope Clinic case? There is no identity of parties between Eversman and none of them between Eversman and his wife. The collateral estoppel cannot apply. It's a whole different issue. Was he testifying it was fair and reasonable? Yeah, because his lawyer told him to do so, and he told him it was fair and reasonable. He saw that agreement for one hour before they did the proof of. Now, how could anybody, a layman, determine that a marital settlement agreement was fair and reasonable in that period of time? His lawyer told him he had to say yes, there'd be divorce. That's what he did. But again, collateral estoppel cannot apply without an identity of parties or parties in privity. And no lawyer is in privity. How about equitable estoppel? I'm sorry? Equitable estoppel. I don't believe so. It wasn't raised in this appeal. I believe it's supported by the record. I'm sorry? We can approve on any basis supported by the record. I understand that. Why doesn't equitable estoppel apply here? I don't believe it would be at all equitable to apply it against a man who had an hour to read a marital settlement agreement before he had to testify and prove it, and clearly could not understand it. It wasn't even explained to him. He would prove that his lawyer gave it to him, said, read it over, I'll be back in an hour. With respect to the issue of fairness and putting collateral estoppel aside for a minute, isn't this issue forfeited for another reason? You indicated at page 5 of your brief that this court, and I'm paraphrasing, must review the response to the motion for summary judgment and will not consider it as a legal argument.  I'm just saying that legal questions existed. And my question is, since when is it the job of the appellate court? To construct your legal argument. Or a party's legal argument. For it to search the record for error. And by not constructing. This argument haven't you forfeited. This issue. No, I don't think so. I agree with you. Why not? I certainly agree with you. You're doing the search. Right. Pardon. I certainly agree with you that it's not the appellate court. To search the record. To find error for me. I'm not sure I understand. Your question. Sorry. Well, you referred us in order to have us determine that there was a legal argument. That there was a legal argument. On this point of the fairness of the marital settlement agreement. You tell us. You can appellate court, go find the argument. In what happened at the trial court. Go look at the response to the motion for summary judgment. And it's in there. Now, since when is that a cogent legal. And isn't that. Required by the Supreme court rules. That is for a party to construct a cogent legal argument for us to review an issue. Requirement must be made. So. We. May look at it as forfeiture. May we not. I don't know. I don't know if it rises to the level of forfeiture. I think. I think what we stress throughout our brief is. That all of these issues are factual. And the prior effect should determine them. Not the court is a matter of law. Meeting the divorce court. Not you. I don't know if it rises to the level of forfeiture. I don't know if it rises to the level of forfeiture. I think perhaps. Where it was unfortunate. I don't think it rises to the level of forfeiture. Everywhere in the brief. Point out. And we're referring to the crowd. Not the appellate court. The trial court should have recognized that all the issues that we raised in our complaint were factual. And they should have been determined by the prior fact that by the court. I don't know. I don't know. With respect to the quadros that you mentioned. Just a couple of minutes ago. Didn't the marital settlement agreement that indicate that it was Laura and her attorneys who would prepare them. So what, what is the argument here? Are you extending it to a negligent review? It's not mentioned. It's not mentioned. It's not mentioned. It should have been reviewed by Mr. Bruning. And they weren't. So they were defective in a number of areas and another attorney had to fix that. Well, but, but wasn't the error here. That the plan administrator. Distributed the funds incorrectly. Not that the quadros were drafted incorrectly. Isn't that what happened? I'm not sure. I believe that the. The quadros as submitted that the administrator acted on. We're prepared improperly. What we alleged in the complaint was. They created quadro errors by dividing all pensions. What in fact, even the marital settlement agreement. Should not, or did not require such a thing. Causing ever been to spend over $4,000. Other attorney's fees. That's found in the appendix at a 14. That's the issue with the quadros. And that's a factual question. Counsel. The trial court's memorandum of decision here seems to be a thorough analysis. Analysis of the counter plaintiffs. Complaint. And without going over all of the allegations raised, let me ask you. What allegation raises a genuine issue of material fact regarding the marital settlement agreement. That Mr. Evers meant settled for a lesser settlement. Then would have been received. Otherwise, what facts were raised to establish that. They were raised in our, our, our complaint, your honor. Paragraph. Five, what was done wrong? First of all. We allege that he was urged and pressured. And you're accepting a marriage settlement agreement, which was not fair or reasonable. It did not properly. Award maintenance. That's a factual question. And the practical cause. Of that failure is a factual question. The analysis was very thorough by the trial court. Your honor. It was just an error. He just decided. That it was fair and reasonable. And therefore there was nothing to complain about. And it's just not a basis for that. Because the advice given by grooming. Was before the marital settlement agreement was even executed. And I've heard this time and time again. Divorce lawyers telling their clients. Well, I've talked to the judge in a free trial. And he's indicated what he's going to do. And it's going to be worse. I'm going to go ahead and sign it. And what we can settle the case for right now. So you go ahead and sign it. And that's exactly the kind of pressure. That everything was. A face with. He was given the opportunity. Was he not to request additional financial statements? Before the prove up, but he declined. That option. Didn't he. Well, his lawyer declined that option. Well, but that. The lawyer declined after speaking with him about that. Well, then. Again, comes back to the lawyer's advice. It goes something like, well, you really don't need this. Why don't you just not get involved? Let's get this over with. We've got enough information. These are all breaches of standard of care. And they're all factual in nature. And we ought to be given the opportunity to prove them. I think that pretty much sums up our position. I wish you had further. Further questions. I have no further questions. Either the justice have any additional questions. I do not. I want to thank you. Mr. Gooch at this time. At the end of the Apple. Lee's argument. We will have an opportunity for a rebuttal. Thank you, your honor. And Mr. Barone. You may proceed with your argument. Is the court council represent Bruning and associates. Okay. Summary judgment was not granted in this matter. Simply because the. Average men did not have an expert. Summary judgment was entered in this matter because Everett's been failed to meet his burden of production. We supplied affidavits. We supplied deposition transcripts. And they were unable to show that there was any question of material fact. In the case. Which precludes summary judgment. In favor of the attorneys. Counsel today. Counsel in his briefs. Wants to continually point to the allegations in his complaint to support that there was a question of fact. It is well-settled law that you cannot create a question of fact. If somebody supplies. Affidavits and depositions. By relying on your own pleading. It was their burden of production. To come up with something to show there was a question of fact. The following facts were absolutely undisputed. Average men and his wife were married. Because you're right. It was their burden of proof in this case here. And expert testimony is usually required. To determine whether a settlement agreement is fair and reasonable. So why isn't an abuse of discretion, not to allow. Defendant leave to obtain an expert. Because he didn't follow the rules. Rule one 91 B says he needed to file an affidavit with the court. And he needed to tell the court. Who the expert was and what opinions he thought he could get from the expert. He probably could have submitted the affidavit. Simply saying, I expect that we'll get the following opinions from an expert. He didn't do that. It wasn't like council was aware of some expert testimony. That was going to say this. $75,000 wasn't fair and reasonable. The judge at the hearing asked council. What do you think the expert's going to say? And they were unable to give any information. It was nothing but a fishing expedition to hope to get somebody. Even today, council hasn't argued. What he thinks an expert would opine. He's not suggesting that he's aware of expert testimony. That would say that the settlement. Was not fair and reasonable. That the $75,000 exceeded. The maintenance standards. In fact, it's an undisputable fact. That as of today. If plaintiff would have paid the $1,500 a month in maintenance, instead. He would have paid more than the $75,000. Lump sum award that he agreed to enter into. It's also an undisputed fact. That the judge made the $75,000 recommendation in front of plaintiff. It wasn't like plaintiff only had an hour to consider this. Then. Plaintiff talked about the $75,000 with my client. He also talked about the $75,000 with an accountant. He testified that he willingly. Agreed to pay the $75,000. And then he entered into the marital settlement agreement. Those are all facts that are undisputed. Plaintiff has not in any way suggested those are incorrect. He's complaining that he doesn't think that the $75,000. Was adequately explained to his client. But that doesn't mean that the $75,000 wasn't fair or reasonable. He's complaining that his client felt pressure to enter into the marital settlement agreement. That in no way means that the marital settlement agreement wasn't fair and reasonable. The facts support the fact that the marital settlement agreement was fair and reasonable. Collateral estoppel, though, and I know the court addressed this. Was, you know, was also appropriate. Counsel is not correct that there has to be an identity of the parties. He's thinking of res judicata. Collateral estoppel, the only thing that there has to be. Is the party for whom. You know. Estoppel is saw had to have been a party that matter. Eversman was a party. That was a final adjudication on the merits. On the issue of whether the marital settlement agreement was fair and reasonable. And Eversman was a party. It satisfies all the elements of collateral estoppel. Relative to the quadros. Those were specifically. Reviewed by the trial judge in this matter. Counsel's not saying what's wrong with the quadros. The quadros, according to the trial judge. These are court orders. The judge certainly is entitled to interpret. Those quadros. Divided the pension in accordance with the terms of the marital settlement. The only issue here was that the administrator. Had a different interpretation of those quadros. Because of the administrator's different interpretation. Additional work had to be done on those quadrants. You're also. I'm sorry. Going back to the question of. Counsel requesting additional time to. Get an expert. How was his request really. Untimely and insufficient. There hadn't been. Had discovery concluded at that point. It hadn't had it. No, your honor. The matter had been pending for two years. We had taken a number of depositions. There was absolutely no discovery pending. All the depositions, both parties wanted to take. Except for experts, which hadn't been done yet. All the depositions, both parties wanted to take had been taken. Written discovery had been complied with. Ages ago. There was nothing open. We went to court after that was done. We advised the trial court that, Hey, we've done. We're done taking the non-expert depositions. We'd like to file a motion for summary judgment. A schedule was then entered for when we were going to file that motion for sketch or summary judgment. When the briefs were going to be due again, if counsel thought he could create a question of fact with an expert. Then he could have supplied with rule one 91 B. He could have supplied an affidavit. He's an attorney. He could have said, judge. I think that the 75. I will have an expert witness who will say. I think the $75,000. Was excessive. Wasn't reasonable. Wasn't fair. There was nothing presented to the court. But again, well, I think that. Clearly wasn't abusive discretion. On behalf of the trial court. Even as we're sitting here today. Counsel isn't saying to this court. I had an expert that would say X. He's saying I should have been given leave to get an expert. I'm not going to do that. But that's an expert who maybe would create a question of fact. That horse is left. Thank you. I have no questions. Yes. Are you done with your argument? Yes. Okay. Very well. I have no additional questions. Just as enough. Do you have any additional questions? I do not. Thank you very much. Mr. Gooch. You may proceed with your rebuttal. Well, I'm here to assure you, your honor. I'm not nearly that bad of a guy. Truly. Well, I would like to start with a couple of things. As Mr. Brony points out. They went to the court and said, we're done with fact discovery. And then immediately thought of several judge remotion. We had not gotten to the time. Of disclosure. Of experts or anything else. This case wasn't pending for three years. The original case. Was a 2018 small claims case. The date of the final order was on August 20th, 2020. And there was not an immediate filing of the malpractice complaint. There was plenty of time. They did this as a tactic. To try to push through some recharging before we even got to the subject. Of expert witnesses and further. We did supply affidavits to rebut them. And those affidavits created. Issues of material fact. You'll find them in the appendix on a 32. Where we referenced. The affidavits and deposition transcripts. Of parties. So that's not a correct statement to say. We just did nothing. In the face of their affidavits. What happened is our affidavits. Create the necessary. Contested facts. With their affidavits.  The affidavits. So to justify and require denial of the motion for summary judgment. But. To suggest that anything. Quite a little stop was much like where's Judy. There has to be an identity. And they're just not. And. There's certainly was no accurate finding that that agreement was fair and reasonable. And even if it was. It was fair and reasonable based on Mr. Everson's testimony. Brought about by his attorneys. Wrongful advice to him. That he had to testify that it was. After reading the agreement for an hour. And being wrongfully advised. That it was proper. And it was better than what he was going to get. If he went to trial. In front of a coincidence. And. He was in a divorce case. This was not the attorney's opinion that he offered to his client. That it was fair and reasonable and that he should agree to it. An opinion that was offered. It's legal advice from an attorney to his client. That. He was not going to get a better deal at trial and it might be worse. Now that's a breach of the standard of care. How is that a breach? How is that a breach of the standard of care? It has to be proven. That it was not fair and reasonable. It has to be proven that he shouldn't have given that advice to his client. It has to be proven that he had no idea what the trial judge would do because the trial judge hadn't heard the facts yet. I mean, they go to a pre-trial. Now we all know what happens in a free trial. A judge makes recommendations based on the facts that are given to him during that free trial. By whoever. Simulate them better. And it's not necessarily to say. Excuse me, counsel. Who can ever simulate them better. I sat in divorce court. There was no simulation. In pre-trial conferences. Attorneys adhere to the professional standards of responsibility. And certainly gave their best opinions. That wasn't my experience. And I don't know if that was a game. That this was a game, so to speak. And hopefully most attorneys do that. That way. But not always. And sometimes facts are misquoted. Or misstated. And that comes up with, if you're told that the person makes $50,000 a year in that pre-trial. And you make a recommendation as to child support and maintenance based on that income. But it turns out at trial, they can only prove $35,000 a year. Then your decision is going to be different than what your recommendation was. And that does happen. I mean, lawyers are advocates. And sometimes they exaggerate a little bit in a pre-trial. It shouldn't happen, but sometimes it does. Sometimes they make a mistake. My point is that a trial judge can only make recommendations based on the facts that he or she receives in a very short period of time. And that's what I'm saying. That's what I'm saying in a pre-trial conference. And I'm saying that an attorney should never tell a client. And I believe it's a breach of standard care to say to an attorney, the judge is going to deal with you much more harshly if you don't agree to this. Or I know how the judge is going to rule a trial. You have no choice, but to agree to this. It's a better deal than what you're going to get at trial. And I think those are breaches of standard of care that we can prove at trial. We should be given that opportunity. And you'd have to grant this because we didn't have an expert. First of all, he was abusive not to give us a time measured at months, not days to properly develop an expert witness. I mean, an expert has got to review all sorts of things before he can opine. That's why we have a case manager. I mean, we got to have an expert in the case management order. Dental. I mean, to grant summary judgment motion to summary judgment motion, because we didn't have an expert directly violates. That'll be still. That case is substantially different than the facts of this case. And in Nelson versus Stocksville, Mr. Stocksville admitted that he was unprepared for trial. So the voluntary non-suit. And the case was then brought in another county. And the, anything that case was forced to defend the divorce in another county. So she experienced. It's excessive. As a result of Mr. Admitted in capital. Correct. That's correct. All right. However, Mr. Good for the proposition that. To failure to name that expert is not a basis for granting a summary judgment motion. Mr. Your time is up. And I apologize for interrupting you. Do either of the justice have any additional questions? No, I do not. The court. Thanks both parties for their arguments. This morning, the case will be taken under advisement. And disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate these proceedings. Thank you. Thank you, your honor. Thank you.